**IN THE COURT OF APPEALS OF IOWA**

No. 22-0496
Filed May 11, 2022

**IN THE INTEREST OF G.M.,**
**Minor Child,**

**Z.M., Father,**
    Appellant,

**E.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait,

District Associate Judge.

Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

J. Joseph Narmi, Council Bluffs, for appellant father.

Kyle E. Focht of Focht Law Office, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Roberta J. Megel of Public Defender Office, Council Bluffs, attorney and

guardian ad litem for minor child.

Considered by Greer, P.J., Chicchelly, J., and Mullins, S.J. *

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**MULLINS, Senior Judge.**

Parents separately appeal the termination of their parental rights to their child, born in 2021, pursuant to Iowa Code section 232.116(1)(e) and (h) (2021). While the father entitles his arguments as challenges to the sufficiency of the evidence supporting the grounds for termination and the juvenile court's best-interests determination, the substance of those arguments really only suggests that, in light of his cognitive issues, the State failed to make reasonable efforts at reunification and he should have been granted additional time at reunification. He also requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c) based on alleged detriment to the child resulting from severance of the parent-child bond. For her part, the mother argues the evidence was insufficient to support termination, termination should have been averted pursuant to section 232.116(3)(c), and she should have been granted additional time to work toward reunification.

## I.    Background

The child was born in April 2021. Medical providers observed hostile tendencies on the part of the father in the child's presence at the hospital. Various concerns about the parents' ability to properly care for the child were also noted. The mother left the hospital against medical advice and attempted to sign the child out of the hospital as well. Due to the father's anger issues, both parents mental-health and cognitive issues, and their inability to provide safe care for the child, a physician took the child into protective custody. The Iowa Department of Human Services (DHS) became involved, and the State sought and obtained an order for

temporary removal. The court subsequently adjudicated the child as in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) and (n).

The parents began attending supervised visits and participating in a safe-care program. While the parents consistently attended visits early on, the supervisor reported they "often struggle[d]" and frequently needed to be reminded to support the child's head and not leave her unattended. The parents' attendance at visitations waned as time marched forward. The parents made "limited progress" toward the safe-care goal of learning how to care for an infant. Their progress in safe care did not improve for the remainder of the CINA proceeding. The parents did not comply with ongoing recommendations to obtain psychological evaluations and IQ testing or complete a parenting course. Their housing situation remained unstable despite receiving services aimed at rectifying that situation. They blamed their inability to obtain housing on the father's status as a sex offender. The parents eventually moved to Nebraska, which created additional difficulties with their ability to attend visits. Ultimately, following a November permanency-review hearing, the court found the parents "have been unable to demonstrate any substantial progress for reunification" and ordered the State to initiate a termination proceeding. The State did so in December.

By the time of the January 2022 termination trial, the mother only recently reported she obtained an apartment. The apartment was in Nebraska and had yet to be furnished. The father had been released from jail for a probation violation the day before the hearing. He had not had any contact with the child for more than a month. The social worker testified to her opinion that the child could not be returned to either parent's care because they are incapable of providing adequate

care or rudimentary necessities for this young child.  She also opined additional time would not alleviate the need for removal.  The mother testified to her plans to comply with prior recommendations regarding services, and she agreed it would be "several months" before the child could be returned to her care.  The father also insisted he was ready to get things squared away as far as service-recommendations go, and he opined the child could be placed in the parents care in "about April."  The mother was also pregnant with a second child, and she was due to give birth in May.

The court ultimately terminated the parents' rights finding, based on the parents' failure to comply with service recommendations aimed at reunification, "that both parents have failed to place themselves in a position to safely and appropriately care for their minor child."

Both parents appeal.

## II.      Standard of Review

We review termination proceedings de novo.  *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021); *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021).  Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Discussion

### A.      Reasonable Efforts

We begin with the father's claim that the DHS did not make reasonable efforts at reunification.  He argues the DHS "threw in the towel on these low functioning people without ever really working with them and giving them a

chance." But the father does not offer an opinion on what additional services should have been provided. And, as the State points out, the father did not raise a complaint regarding the sufficiency of reunification efforts until the termination hearing, which is too late to preserve error. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). Furthermore, the record belies the father's reasonable-efforts challenge. Various services were court ordered or recommended by DHS, and the father did not meaningfully follow through. Of the services in which he did participate, he showed little, if any, progress.

### B. Grounds for Termination

As noted, the juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(e) and (h). The mother challenges the sufficiency of the evidence supporting both grounds. Without providing a substantive argument challenging either ground, the father claims "[t]he State clearly has not met its burden of proof in terminating [his] parental rights."

"On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Turning our focus to paragraph (h), the mother only challenges the final element—that the child could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the child cannot be returned to parental custody at the present time); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). At trial, the mother cogently agreed, based on her failure to adequately engage in recommended services, it would be "several months" before the child could be

returned to her care. This concession, which the record supports, "amounts to clear and convincing evidence that the child[] could not be returned to her care at the time of the termination hearing." *In re A.A.*, No. 21-1972, 2022 WL 946503, at *3 (Iowa Ct. App. Mar. 30, 2022). To the extent the father is claiming the child could have been returned to his care at the time of trial, he similarly agreed he would need additional time before the child could be returned to his care. The record supports his concession as well. We thus find the evidence sufficient to authorize termination under section 232.116(1)(h).

C. Best Interests and Statutory Exception

Within her challenge to the sufficiency of evidence supporting the grounds for termination, the mother argues termination is not in his child's best interests, *see* Iowa Code § 232.116(2), due to the closeness of the parent-child bond. *See id.* § 232.116(3)(c). The father passively argues "[t]erminating the parental rights of the father would not be in the child's best interests" and "would be devastating to the child." We address these distinct steps in the three-step termination framework separately. *See In re A.S.,* 906 N.W.2d 467, 472–73 (Iowa 2019) (discussing three-step termination framework).

In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We

> look to the child's long-range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past

performance because it may indicate the quality of care the parent is capable of providing in the future.

*In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (quoting *J.E.*, 723 N.W.2d at 798).

Both parents acknowledge they have cognitive issues, and the record affirmatively establishes these issues affect their ability to properly care for this young child. While low mental functioning alone is insufficient to support termination, the mental capacity of a parent is a relevant best-interests consideration. *See* Iowa Code § 232.116(2)(a); *D.W.*, 791 N.W.2d at 708. The child was removed shortly after her birth, and services specifically aimed at the parents' competency in providing appropriate care were provided. However, those ongoing efforts were largely fruitless. While the parents asserted at the termination trial that they were ready to comply with all ordered and recommended services in order to alleviate the need for removal, waiting that long is too late. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). And "we cannot deprive a child of permanency after the State has proved a ground for termination" by hoping the parent will rectify the situation sometime in the future. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012). On our review, we agree with the juvenile court that the child's need for stability and permanency, and her best interests, are best served by termination.

Both parents argue termination of their rights would be detrimental to the child based on the closeness of the parent-child bonds and termination should have been foregone pursuant to Iowa Code section 232.116(3)(c). We first note the application of a statutory exception to termination, if applicable, is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). It is true the parents have a strong attachment

to the child, but the child's bond with the parents can only be described as minimal at best. In any event, we conclude the parents failed to meet their burden to show "that the termination would be detrimental to the child . . . due to the closeness of the parent-child relationship," especially given the child's young age and removal from both parents for most of her life. *See* Iowa Code § 232.116(3)(c); *see also A.S.*, 906 N.W.2d at 476 ("[T]he parent resisting termination bears the burden to establish an exception to termination . . . ."). The parents presented no evidence the child would suffer physical, mental, or emotional detriment if their rights were terminated. As such we conclude this exception to termination is not applicable.

D. Additional Time

Both parents suggest they should have been granted additional time to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

But the parents have failed to present us with any "specific factors, conditions, or expected behavioral changes which [would] comprise the basis for the determination that the need for removal . . . will no longer exist at the end of" an extension of time. *See id.* § 232.104(2)(b). The main issue in these proceedings was the parents' inability to provide safe care for a young child. The parents participated in the safe-care program, which was specifically aimed at

remedying that issue.  The program consists of various modules.  The parents went through the modules several times, but the involved provider reported "the parents made limited to no progress concerning safe care due to their lack of understanding the material" and neither parent has "been able to successfully complete any of the modules or lessons throughout the life of the case."  Looking in the rearview mirror to assess what the future likely holds, we are unable to conclude the need for removal will no longer exist after six additional months, and we deny the parents' request for an extension.

## IV.    Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**